UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PURE LINE SEEDS, INC.,<br><br>    Petitioner,<br><br>v.<br><br>GALLATIN VALLEY SEED CO., INC.,<br><br>    Respondent. | Case No. 1:14-cv-00015-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

# INTRODUCTION

Before the Court is Petitioner Pure Line Seeds, Inc.'s motion to vacate the arbitration award. (Dkt. 3.) Arbitrator James R. Gillespie entered an award in the arbitration of *Pure Line Seeds, Inc. v. Gallatin Valley Seed Company, Inc.*, American Association Case No. 77-502-000296-12 on October 15, 2013, finding in favor of Pure Line in the amount of $19,823.36. Pure Line claimed damages under its contract with Gallatin in the amount of $157,406.25. Pure Line contends the arbitrator erred in his pre-arbitration rulings precluding certain discovery, which in turn prevented Pure Line from proving its damages. Pure Line seeks a judgment vacating the arbitration award and remanding for further proceedings under 9 U.S.C. § 10(a).

Having fully reviewed the record, the Court finds the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the motion will be decided on the record before this Court without oral argument. Dist. Idaho L. Rule 7.1(d). The hearing set for July 8, 2014, will be vacated.

Upon consideration of the parties' briefs, the relevant authorities and the record, the Court recommends that the motion be denied.

## BACKGROUND

This Arbitration involves a dispute over a Sales Agent Agreement ("Agreement") entered into by the parties on January 31, 2009, in which Gallatin appointed Pure Line as a sales agent to sell Gallatin Valley pea seeds to customers designated in the Agreement ("Customers") in the territory of the United States east of the Rocky Mountains and Canada.

Pure Line's obligations under the Agreement[1] were as follows: "Pure Line shall use its best efforts in the promotion, distribution and sale of the Products… and shall cooperate with Gallatin valley in the implementation of all sales, advertising or other promotional programs… Customer Contracts are to be officially executed by Pure Line and the Customer on behalf of Gallatin..." Thirty days prior to the start of the seed growing season (or by December 31), Pure Line "shall furnish Gallatin Valley an estimate of the quantity of Products Customers have forecasted to purchase for the

---

[1] The Sales Agreement is attached to Docket No. 8 as Exhibit 20.

subsequent production season. All Customer orders will be subject to acceptance by Gallatin Valley." "In consideration for the services performed by Pure Line…Gallatin Valley agrees to pay "$0.0375 per pound Sales Commission, for each pound sold and delivered to Customer as a result of the efforts of Pure Line." *See* Sales Agreement ¶¶ 2.1, 2.2, 4.1 (Dkt. 8, Ex. 20.)

The Agreement provided that either party could terminate upon ninety days' notice. *Id.* ¶ 7.1. Gallatin terminated the Agreement effective August 31, 2012. Pure Line, however, terminated its performance on July 2, 2012. Arbitrator's Decision (Dkt. 9, Ex. 25.)

The crux of the Arbitration was over the amount of commissions owed to Pure Line for sales delivered to Customers in 2013. Pure Line's theory of the case was that, given the unique nature of the pea seed industry, 2013 sales were obtained a year or more in advance of delivery, during the time when Pure Line was still acting as exclusive sales agent for Gallatin Valley. Pure Line presented evidence that, in the pea seed industry, customers must commit to purchasing pea seeds a year or more in advance of the time the pea seeds are delivered because, to fill pea seed orders, these orders must be placed prior to the planting season so the proper variety and adequate quantity are planted to fit the order. The evidence established pea seed orders for 2013 deliveries were placed prior to the 2012 planting season, or in February or March of 2012. Consequently, Pure Line argued that 2013 sales were procured in the spring of 2012, prior to the termination of the Agreement, and pursuant to its efforts.

Pure Line argued that, to calculate its damages, it needed information on the total number of pounds of pea seeds delivered to Customers in 2013. Pure Line made several requests for production of documentation relating to Gallatin's 2013 total sales to Customers, which Gallatin refused to produce claiming the information was irrelevant and proprietary. Pure Line filed two motions to compel, both of which the Arbitrator denied, and a motion to reconsider, requesting the Arbitrator to compel disclosure of all pounds of pea seed delivered to Gallatin Customers in 2013. The Arbitrator denied the motion to reconsider.[2]

At the commencement of the arbitration hearing, Pure Line renewed its motion and argument that it was entitled to discovery of evidence of the total pounds of pea seed delivered to Gallatin Customers, which motion the Arbitrator again denied. Pure Line contends that as a result, it was unable to present evidence of the amount of commissions owed and the Arbitrator failed to consider evidence necessary and relevant to Pure Line's case.

Gallatin, on the other hand, presented its case that Pure Line repudiated the Sales Agreement at a critical juncture in the pea seed sales efforts, and that Gallatin had to continue where Pure Line left off. While Gallatin did not dispute that Pure Line was owed something for its efforts, Gallatin contended that it, not Pure Line, was responsible

---

[2] The Arbitrator did require Gallatin to produce certain records establishing the Customers it sold pea seed to in 2013, but the quantity, variety of pea seed, and other information was redacted. Gallatin had argued that such information was proprietary, because Pure Line (a competitor in the pea seed industry), could use the information to lure Gallatin's customers away.

for most of the work necessary to procure the sales of Gallatin Valley pea seeds delivered during the 2013 shipping season.

At the arbitration hearing, Pure Line presented written estimates for six customer orders to be fulfilled in 2013. Otherwise, the testimony at the arbitration established that Pure Line obtained verbal "best thoughts and estimates," but it had no other written estimates. Gallatin argued that Pure Line was entitled only to the commissions resulting from the six written estimates Pure Line obtained before July 2, 2012, less expenses Gallatin incurred in finalizing the sales.

The Arbitrator accepted Gallatin's theory of the case, awarding Pure Line $19,823.36, representing the "reasonable value of the sales effort owing by Gallatin" to Pure Line. Mem. in Opp. at 11 (Dkt. 15); Arbitrator's Award (Dkt. 9 Ex. 25.) The Arbitrator excluded evidence that would have established the total amount of seed sold in 2013.

Pure Line asserts that the Arbitrator committed misconduct by refusing to hear and consider evidence pertinent and relevant to the controversy, and by acting in manifest disregard of the law. Pure Line argues that it did not receive an opportunity to fully present its case, and did not receive a fair hearing, to its prejudice. Gallatin contends that Pure Line is attempting to revisit the evidence, which it cannot do under the Arbitration Act.

## ANALYSIS

1. **Standard of Review**

Under 10 U.S.C. § 10(a)(3) and (a)(4) of the Federal Arbitration Act, a United States district court may vacate an arbitration award under certain circumstances, such as where the arbitrator was "guilty of misconduct… in refusing to hear evidence pertinent and material to the controversy…" or "where the arbitrator[]… so imperfectly executed [his] powers that a mutual, final, and definite award upon the subject matter was not made." Section 10 represents the exclusive grounds for vacating an arbitration award. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). The party seeking to vacate the arbitration award bears the burden for establishing grounds to do so. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

The Court's responsibility upon review is to ensure that the arbitration act's due process protections were afforded. *Id.* The Court is not to impose the federal courts' procedural and evidentiary requirements upon the arbitration hearing. *Id.* As such, the scope of review is narrow and deferential. *Kyocera Corp. v. Prudential –Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003). The arbitration act provides "no authorization for a merits review." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012).

2.  **Section 10(a)(3) Misconduct**

Pure Line argues that the exclusion of evidence related to the 2013 pea seed shipments was crucial evidence, and the arbitrator's refusal to admit or consider anything other than the six written customer estimates procured prior to July 2, 2012, constituted misconduct under 9 U.S.C. § 10(a)(3). Pure Line cites to testimony admitted by the Arbitrator that Pure Line's efforts resulted in securing the initial sales for all 2013

shipments, not just for the six customers who executed written estimates. Pure Line contends that without the 2013 sales information, it was unable to prove that the verbal estimates it received lead to sales.

The fundamental flaw in Pure Line's argument is that it requires the Court to revisit the merits, which the Court cannot do. By implication, the Arbitrator's discovery ruling prohibiting discovery of the 2013 sales shipments, and its acceptance of Gallatin's calculation of damages based upon the six written estimates, meant the Arbitrator rejected Pure Line's theory of the case. Consequently, the sales shipment information Pure Line sought was not relevant.

Second, even if the Arbitrator had allowed the discovery and admitted the evidence, Pure Line cannot demonstrate that consideration of the evidence would have resulted in a different outcome of the arbitration. A showing of prejudice is a prerequisite to relief based upon an arbitrator's evidentiary ruling. *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co.*, 933 F.2d 1481, 1490 (9th Cir. 1991) (citing *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 350, 15 L.Ed. 96 (1854) (to warrant reversal because of an arbitrator's mistake in the conduct of the hearing, party must show that "if it had not happened, [the arbitrator] should have made a different award")). The only prejudice Pure Line can show is that, had the documents been produced and the evidence admitted, the Arbitrator would have made a different award. But, in this context, the argument is equivalent to a merits review.

The Arbitrator in this matter heard evidence of Pure Line's theory of the case---that Pure Line's efforts prior to July 2, 2012, directly correlated into 2013 sales. The

Arbitrator rejected Pure Line's theory, and by finding that Pure Line repudiated the Sales Agreement on July 2, 2012, the Arbitrator did not consider Pure Line entitled to commissions for anything other than the six written sales estimates. Next, the Arbitrator accepted Gallatin's damage calculation, which reduced the gross commissions by the cost of replacement labor and other expenses. *See* Mem. at 11 (Dkt. 15.)

The Arbitrator heard not one, but two motions to compel, and revisited his decision upon Pure Line's motion for reconsideration. The parties had the opportunity to present written briefs regarding the discovery motions. The parties later participated in a two day arbitration hearing and presented evidence and testimony. Presumably, had the Arbitrator accepted Pure Line's theory of the case, the Arbitrator could have extended the hearing to allow for the presentation of evidence supporting Pure Line's theory regarding its damage calculation. The Arbitrator did not do so, despite Pure Line's renewal of its objection to the Arbitrator's evidentiary ruling prior to commencement of the arbitration hearing.

The process the Arbitrator employed ensured due process by allowing the parties to present their respective arguments regarding the discovery issue not once, but three times; submitting briefing addressing these conclusions; and allowing Pure Line's evidence regarding its theory of the case. The Arbitrator gave each of the parties an adequate opportunity to present their evidence and arguments. Arbitrators "enjoy 'wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit.'" *U.S. Life Ins. Co.*, 591 F.3d at 1175. The Court concludes the Arbitrator appropriately exercised his discretion and that there was no misconduct in

refusing to compel production of or otherwise consider the evidence Pure Line contended proved its damage calculation. *See also Burchell*, 58 U.S. (17 How.) at 352 ("If they [the arbitrators] have given their honest, incorupt judgment on the subject-matters submitted to them, after a full and fair hearing of the parties, they are bound by it; and a court ... [has] no right to annul their award because it thinks it could have made a better."[sic]), *cited in Employers Ins. of Wausau*, 933 F.2d at 1491.

### 3. Manifest Disregard of the Law

Pure Line alternatively argues the Arbitrator engaged in manifest disregard of the law under Section 10 of the Arbitration Act. Vacature is appropriate where it is evident that "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "[A]rbitrators exceed their powers in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012) (citing *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003)). "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Id.* (citing *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010)). "To vacate an arbitration award on this ground, '[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it.'" *Id*. "An award is completely irrational 'only where the arbitration decision fails to draw its essence from the agreement.'" *Id.* (citing *Lagstein*, 607 F.3d at 642).

"An arbitration award 'draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Id.* (citing *Lagstein*, 607 F.3d at 642).

But the Court may not reverse an arbitration award even if the arbitrator erroneously interpreted the law, or made erroneous findings of fact. *Swenson v. Bushman Inv. Properties, Ltd.*, 870 F.Supp.2d 1049, 1057 (D. Idaho April 27, 2012). To demonstrate manifest disregard, Pure Line must show that the Arbitrator understood and correctly stated the law, but proceeded to disregard the same. *Id.*

Pure Line argues the Arbitrator disregarded the rules of discovery, which would have allowed Pure Line to obtain documentation and information on the total pounds of pea seed Gallatin sold to customers in 2013. Pure Line contends the information was relevant to the dispute, and therefore it was entitled to the discovery of those sales figures. Pure Line cites to AAA Rule of Arbitration R-22 and R-34, which mandates that the arbitrator "manage any necessary exchange of information among the parties…safeguarding each party's opportunity to fairly present its claims and defenses, and allows the parties to "offer such evidence as is relevant and material to the dispute." Pure Line cites also to Fed. R. Civ. P. 26, which permits parties to obtain discovery of nonprivileged matter that "is relevant to any party's claim or defense." Relevant evidence is evidence that has "any tendency to make a fact more or less probable that it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401.

Again, Pure Line's argument fails to appreciate the applicable standard. Although Pure Line argues the Arbitrator disregarded the rules of evidence, in reality, Pure Line's argument hinges upon its contention the Arbitrator committed factual or legal error. In other words, Pure Line wants this Court to reweigh or reinterpret the evidence. In accepting Gallatin's damage theory and finding the $19,823.36 dollar figure represented the "reasonable value of the sales effort under the parties' agreement, the Arbitrator necessarily considered the sales figures for *all* 2013 sales to be irrelevant. The Court cannot revisit the Arbitrator's decision in that regard. *See Swenson*, 802 F.Supp.2d at 1048.

Further, in reviewing the Sales Agreement, it appears the Arbitrator's interpretation of the evidence is plausible. The Sales Agreement required Pure Line to furnish Gallatin Valley an estimate of the quantity of products Customers forecasted to purchase. The only estimates were the six written ones. Pure Line advanced that it was given "verbal" estimates, and that its sales efforts procured those "estimates" that then resulted in 2013 sales. But the Arbitrator, by accepting Gallatin's theory and measure of damages, necessarily rejected Pure Line's theory and relied upon the provision in the Sales Agreement requiring Pure Line to furnish estimates. The only ones apparently furnished were the six written ones admitted into evidence. The Court cannot say that the Arbitrator's ultimate finding in this regard was an incorrect interpretation of the parties' agreement framing his decision to exclude evidence that would have supported Pure Line's damage calculation.

Pure Line had ample opportunity to present evidence that its sales efforts prior to July 2, 2012, resulted in the sales procured in 2013 by Gallatin. *See* Claimant's closing Statement (Dkt. 9 Ex. 24) . Pure Line made the argument that, according to the Sales Agreement, it was entitled to be compensated for all efforts that resulted in sales, regardless of when the efforts occurred and when the Sales Agreement was terminated. *Id. See also* Hearing Transcript Vol. I p. 8-9 (Dkt. 9 Ex. 19) . By rejecting Pure Line's theory of the case and adopting Gallatin's measure of damages, the Arbitrator implicitly found Pure Line's theory underlying its calculation of damages based upon total 2013 sales to be unsupported by the evidence, and therefore the additional evidence supporting the mathematical damage calculation advanced by Pure Line was irrelevant.

The Arbitration Act does not permit vacatur under the circumstances.

## CONCLUSION

The Court recommends that the Motion to Vacate Arbitration Award be denied. Pure Line may have disagreed with the Arbitrator's evidentiary rulings. But it received a full, fair, and formal hearing. Pure Line had an opportunity to be heard on its theory of the case, and it was permitted to present relevant and material evidence based upon the Arbitrator's rulings and view of the evidence. The Court should not disturb the Arbitrator's factual and legal conclusions.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Petitioner's Motion to Vacate Arbitration Award (Dkt. 3) be **DENIED**.

The hearing set for July 8, 2014, in this matter is **VACATED**. Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **June 19, 2014**

Honorable Candy W. Dale
United States Magistrate Judge